UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

MICHAEL CAGLE,

                        Plaintiff,

            v.                                              9:04-CV-1151
                                                            (TJM/GHL)
P. PERRY, Sergeant; J. PRICE, Correctional Officer;
M. RILEY, Correctional Officer; W. EATON; and
W. BROWN, Correctional Officer,

                        Defendants.

_____

APPEARANCES:                                    OF COUNSEL:

MICHAEL CAGLE, 99-A-6191
   Plaintiff, *Pro Se*
Upstate Correctional Facility
P.O. Box 2001
Malone, NY 12953

HON. ANDREW M. CUOMO                            ED J. THOMPSON, ESQ.
Attorney General for the State of New York      Assistant Attorney General
   Counsel for Defendants
615 Erie Boulevard West, Suite 102
Syracuse, NY 13204

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION

_____This matter has been referred to me for Report and Recommendation by the Honorable

Thomas J. McAvoy, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and

Local Rule N.D.N.Y. 72.3(c).  Generally, in this *pro se* civil rights complaint brought under 42

U.S.C. § 1983, Inmate Michael Cagle ("Plaintiff") alleges that five employees of the New York

State Department of Correctional Services' Upstate Correctional Facility–Sergeant P. Perry, and

Correctional Officers J. Price, M. Riley, W. Eaton, and W. Brown ("Defendants")–

violated his rights under the First, Eighth and Fourteenth Amendments when, between August 2,

2004, and April 13, 2005, at Upstate Correctional Facility, they interfered with his right to access

the courts, they so harassed him as to deny him the minimal civilized measure of life's

necessities, and they denied him property and/or liberty without due process of law. (*See*

*generally* Dkt. No. 15.)  Currently before the Court are Plaintiff's motion for summary judgment

and Defendants' cross-motion for summary judgment.  (Dkt. Nos. 36, 42.)  For the reasons

discussed below, I recommend that Plaintiff's motion for summary judgment be denied, and that

Defendants' motion for summary judgment be granted.

I.      **BACKGROUND**

        A.      **Plaintiff's Third Amended Complaint**

        Liberally construed, Plaintiff's Third Amended Complaint asserts the following claims

and factual allegations against Defendants Perry, Price, Riley, Eaton and Brown.[1]

        On **August 2, 2004**, Defendants **Riley**, **Brown** and **Perry** violated Plaintiff's **First**

**Amendment** right to access to the courts when they searched Plaintiff's cell and person at

---

[1]      Although Plaintiff's Third Amended Complaint named in its caption six new
Defendants--LaPage, J. McGaw, H. Perry, E.W. Liberty, L. Russle, and R. Gale--Judge McAvoy
ruled, shortly after the filing of the Third Amended Complaint, that, because Plaintiff failed to
include any specific factual allegations against those six Defendants in the body of his Third
Amended Complaint, those six Defendants were not proper Defendants and would not be added
to the docket in the action.  (Dkt. No. 16 at 1-2 [Order filed 4/27/05].)  Judge McAvoy also stated
that "Plaintiff may of course amend his complaint at a later time to add these defendants, subject
to the Court's approval."  (*Id*. at n.1.)  However, Plaintiff did not subsequently file a Fourth
Amended Complaint.  While he attempted (without success) to file a pleading on July 17, 2007,
that proposed pleading was a Supplemental Complaint (having to do with actions occurring on
July 17, 2007), and not a Fourth Amended Complaint.  In any event, the proposed Supplemental
Complaint did not contain factual allegations regarding any of the six aforementioned
Defendants.  (Dkt. Nos. 50, 51.)

Upstate C.F. in **retaliation** against Plaintiff for having filed a grievance at Gouverneur C.F.[2]

On or before **September 20, 2004** (when Defendants Price, Perry and Eaton conducted a search of Plaintiff's cell), **some or all of the Defendants** violated Plaintiff's **First Amendment** right to access to the courts when they "set up" Plaintiff for the disciplinary offense of possessing a weapon by planting a weapon under his bed, in **retaliation** against him for having filed "a lot of complaints" with the Department of Corrections in Albany, N.Y., and the United States Marshal's Service, regarding certain (but unspecified) actions taken by Defendant Perry and a Lt. Quinn.[3]

At various points **between August 2, 2004** (when the first search of Plaintiff's cell occurred at Upstate C.F.) **and April 13, 2005** (when Plaintiff filed his Third Amended Complaint), **some or all of the Defendants** violated Plaintiff's **First Amendment** right to access to the courts by (1) wrongfully seizing from his cell copies of various of his grievances, (2) wrongfully denying Plaintiff access to his legal mail and requested writing materials, and/or (3) denying Plaintiff his regular meals, regular mail and recreation in retaliation against Plaintiff for having filed grievances concerning the aforementioned events.[4]

At various points **between August 2, 2004** (when the first search of Plaintiff's cell occurred at Upstate C.F.) **and April 13, 2005** (when Plaintiff filed his Third Amended Complaint), **some or all of the Defendants** violated Plaintiff's **First Amendment** right to the

_____

[2]     (Dkt. No. 15, ¶¶ 7-11, 22 [Plf.'s Third Am. Compl.].)

[3]     (*Id*. at ¶¶ 12-15.)

[4]     (*Id*. at ¶¶ 14-15, 18-20.)

**free flow of mail** by wrongfully denying Plaintiff access to his legal mail and regular mail.[5]

At various points **between August 2, 2004** (when the first retaliatory search of Plaintiff's cell occurred at Upstate C.F.) **and April 13, 2005** (when Plaintiff filed his Third Amended Complaint), **some or all of the Defendants** violated Plaintiff's right to adequate **prison conditions** under the **Eighth Amendment** when, by taking the aforementioned retaliatory and harassing actions, they, with deliberate indifference, denied Plaintiff the minimal civilized measure of life's necessities.[6]

At various points **between August 2, 2004** (when the first retaliatory search of Plaintiff's cell occurred at Upstate C.F.) **and April 13, 2005** (when Plaintiff filed his Third Amended Complaint), **some or all of the Defendants** violated Plaintiff's **due process** rights under the **Fourteenth Amendment** when, by taking the aforementioned actions, they denied him property and/or liberty without due process of law.[7]

### B.    Plaintiff's Motion for Summary Judgment

Plaintiff's motion for summary judgment is hardly a model of clarity.  Rather than attaching a Rule 7.1 Statement in support of his motion, Plaintiff attaches a declaration tracing, or outright reciting, Defendants' Answer to Plaintiff's Third Amended Complaint.[8]  However, *very* liberally construed, Plaintiff's memorandum of law may be said to assert three arguments: (1) the uncontroverted record evidence establishes that--during his various disciplinary hearings

---

[5]    (*Id.* at ¶¶ 14, 19.)

[6]    (*Id.* at ¶¶ 6-15, 21-22.)

[7]    (*Id.* at ¶¶ 6-15, 17-18.)

[8]    (Dkt. No. 36, Part 1 [Plf.'s Decl.].)

at Upstate C.F. in 2004, and during the various seizures of his legal mail and legal materials at Upstate C.F. in 2004 and 2005--Plaintiff's right to due process under the Fourteenth Amendment (in particular, his right to effective assistance of counsel) was violated; (2) the uncontroverted record evidence establishes that, when considered together, the conditions of Plaintiff's confinement at Upstate C.F. in 2004 and 2005 constituted "cruel and unusual punishment" under the Eighth Amendment; and (3) the uncontroverted record evidence establishes that, by taking various forms of adverse action against Plaintiff at Upstate C.F. in 2004 and 2005 in retaliation for having filed complaints about his prison conditions, Defendants violated his right under the First Amendment to petition the government for the redress of grievances.[9]

Defendants respond that Plaintiff's motion should be denied because (1) it is not supported by a Statement of Material Facts, as required by Local Rule 7.1 of the Local Rules of Practice for this Court, and (2) rather than warranting a grant of summary judgment to Plaintiff, the uncontroverted record evidence warrants a grant of summary judgment to Defendants.[10]

## C.    Defendants' Cross-Motion for Summary Judgment

Defendants' cross-motion for summary judgment is essentially based on two grounds: (1) Plaintiff has failed to adduce facts establishing, or even allege facts plausibly suggesting, that any actions taken by Defendants against Plaintiff were in retaliation for Plaintiff having engaged in an activity that is protected by the First Amendment; and (2) Plaintiff has failed to adduce facts establishing, or even allege facts plausibly suggesting, that he suffered actual damages as a result of the alleged seizure of grievance materials, which is necessary to establish an access-to-the-

---

[9]       (Dkt. No. 36, Part 2 [Plf.'s Mem. of Law].)

[10]      (Dkt. No. 42, Part 2, ¶ 6 [Affirm. of Thompson].)

courts claim under the First Amendment.[11]

Liberally construed, Plaintiff's papers in opposition to Defendants' cross-motion assert the following arguments: (1) Defendants' retaliatory motive during 2004 and 2005 is evidenced by (a) their current failure to cure the deprivation of food and recreation to Plaintiff, and (b) at an unidentified time during that time period, Plaintiff was told by an (unidentified) acting watch commander not to write the New York State Department of Correctional Services anymore; (2) Defendants' violation of the Eighth Amendment is established by the fact that, when considered together, the actions taken against Plaintiff by Defendants in 2004 and 2005 were a form of punishment that was "grossly disproportionate" to the offenses he had committed; and (3) in addition to violating Plaintiff's rights under the First, Eighth and Fourteenth Amendments, Defendants violated Plaintiff's right to privacy under the Fourth Amendment by conducting various wrongful searches of Plaintiff's cell, person and mail, and seizures of his property.[12]

## II.   APPLICABLE LEGAL STANDARDS

### A.   Motion for Summary Judgment Under Rule 56

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  In determining

---

[11]      (Dkt. No. 42, Part 6 [Defs.' Mem. of Law].)

[12]      (Dkt. No. 44.)

6

whether a genuine issue of material[13] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.[14]

However, when the moving party has met its initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial."[15]  The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts."[16]  Rather, "[a] dispute regarding a material fact is *genuine* if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[17]

What this somewhat complex burden-shifting standard means is that, where a plaintiff has failed to respond to a defendant's motion for summary judgment, "[t]he fact that there has

---

[13]     A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

[14]     *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) [citation omitted]; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) [citation omitted].

[15]     Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made [by a defendant] and supported as provided in this rule, the [plaintiff] may not rest upon the mere allegations . . . of the [plaintiff's] pleading, but the [plaintiff's] response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the [plaintiff] does not so respond, summary judgment, if appropriate, shall be entered against the [plaintiff]."); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986).

[16]     Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made [by a defendant] and supported as provided in this rule, the [plaintiff] may not rest upon the mere allegations . . . of the [plaintiff's] pleading . . . ."); *Matsushita*, 475 U.S. at 585-86; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

[17]     *Ross v. McGinnis*, 00-CV-0275, 2004 WL 1125177, at *8 (W.D.N.Y. March 29, 2004) [internal quotations omitted] [emphasis added].

been no response to a summary judgment motion does not . . . [by itself] mean that the motion is to be granted automatically."[18]  Rather, practically speaking, the Court must (1) determine what material facts, if any, are undisputed in the record, and (2) assure itself that, based on those undisputed material facts, the law indeed warrants judgment for the defendants.[19]  However, where a plaintiff has failed to respond to a defendant's statements of material fact contained in its Statement of Material Facts (a/k/a its "Rule 7.1 Statement"), the facts as set forth in that Statement will be accepted as true[20] to the extent that (1) those facts are supported by the evidence in the record,[21] and (2) the non-moving party, if he is proceeding *pro se*, has been

---

[18]     *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).

[19]     *See Champion*, 76 F.3d at 486 ("Such a motion may properly be granted only if the facts as to which there is no genuine dispute show that . . . the moving party is entitled to a judgment as a matter of law.") [internal quotation marks and citation omitted]; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.) (stating that, where a plaintiff has failed to respond to a defendant's motion for summary judgment, "[t]he Court must review the merits of Plaintiff's claims").  This requirement (that the Court determine, as a threshold matter, that the movant's motion has merit) is also recognized by Local Rule 7.1(b)(3) of the Local Rules of Practice for this Court, which provides that "the non-moving party's failure to file or serve . . . [opposition] papers . . . shall be deemed as consent to the granting . . . of the motion . . . unless good cause is shown," *only where the motion has been "properly filed" and "the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein."*  N.D.N.Y. L.R. 7.1(b)(3) [emphasis added].

[20]     *See* Local Rule 7.1(a)(3) ("Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.").

[21]     *See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 243 (2d Cir. 2004) ("[W]here the non-movant party chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial. . . .  If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary matter is presented. . . . [I]n determining whether the moving party has met this burden of showing the absence of a genuine

specifically advised of the potential consequences of failing to respond to the movant's motion for summary judgment.[22]  (Here, I note that Plaintiff was so advised by both Defendants and the Court.)[23]

Implied in the above-stated standard is the fact that, where a non-movant fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute, even if that non-movant is proceeding *pro se*.[24]  In

_____

issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 Statement.  It must be satisfied that the citation to evidence in the record supports the assertion.") [internal quotation marks and citations omitted]; *Govan v. Campbell*, 289 F. Supp.2d 289, 295 (N.D.N.Y. 2003) (Sharpe, M.J.) ("In this case, [the plaintiff] did not file a statement of undisputed facts in compliance with Local Rule 7.1(a)(3). Consequently, the court will accept the *properly supported* facts contained in the defendants' 7.1 statement.") [emphasis added]; *Adirondack Cycle & Marine, Inc. v. Am. Honda Motor Co., Inc.*, 00-CV-1619, 2002 U.S. Dist. LEXIS 4386, at *2-3 (N.D.N.Y. Mar. 18, 2002) (McAvoy, J.) ("Local Rule 7.1 requires a party opposing summary judgment to respond to the statement of undisputed material facts submitted by the movant.  To the extent such facts are not controverted, *the properly supported facts* will be taken as true.") [emphasis added; citation omitted]; *cf.* Fed. R. Civ. P. 83(a)(1) ("A local rule shall be consistent with . . . Acts of Congress and rules adopted under 28 U.S.C. §§ 2072 and 2075 [which include the Federal Rules of Civil Procedure] . . . ."); Fed. R. Civ. P. 56(e) (requiring that, "if the non-movant does not . . . respond [to a summary judgment motion], summary judgment, *if appropriate*, shall be entered against the non-movant," and requiring that, as a threshold matter, the motion for summary judgment must be "made *and supported* as provided in this rule") [emphasis added].

[22]     *See Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996); *cf.* N.D.N.Y. L.R. 56.2 (imposing on movant duty to provide such notice to *pro se* opponent).

[23]     (Dkt. No. 42, Part 1.)

[24]     *See Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470 (2d Cir. 2002) ("We agree with those circuits that have held that Fed. R. Civ. P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute.") [citations omitted]; *accord*, *Lee v. Alfonso*, No. 04-1921, 2004 U.S. App. LEXIS 21432 (2d Cir. Oct. 14, 2004), *aff'g*, 97-CV-1741, 2004 U.S. Dist. LEXIS 20746, at *12-13 (N.D.N.Y. Feb. 10, 2004) (Scullin, J.) (granting motion for summary judgment); *Fox v. Amtrak*, 04-CV-1144, 2006 U.S. Dist. LEXIS 9147, at *1-4 (N.D.N.Y. Feb. 16, 2006) (McAvoy, J.) (granting motion for summary judgment); *Govan v. Campbell*, 289 F. Supp.2d 289, 295 (N.D.N.Y. Oct. 29, 2003)

the event the district court chooses to conduct such an independent review of the record, any

verified complaint filed by the plaintiff should be treated as an affidavit.[25]  Here, I note that

Plaintiff's Third Amended Complaint does *not* contain a verification pursuant to 28 U.S.C. §

1746, nor is that pleading even signed as required by Rule 11 of the Federal Rules of Civil

Procedure.[26]  However, Plaintiff's opposition to Defendants' cross-motion for summary

judgment does contain a verification pursuant to 28 U.S.C. § 1746.[27]  In any event, to be

sufficient to create a factual issue for purposes of a summary judgment motion, an affidavit must,

among other things, not be conclusory.[28]  An affidavit is conclusory if, for example, its assertions

lack any supporting evidence or are too general.[29]  Finally, even where an affidavit (or verified

---

(Sharpe, M.J.) (granting motion for summary judgment); *Prestopnik v. Whelan*, 253 F. Supp.2d
369, 371-372 (N.D.N.Y. 2003) (Hurd, J.).

[25]      *See Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d. Cir. 2004) ("[A]
verified pleading . . . has the effect of an affidavit and may be relied upon to oppose summary
judgment."); *Fitzgerald v. Henderson*, 251 F.3d 345, 361 (2d Cir. 2001) (holding that plaintiff
"was entitled to rely on [his verified amended complaint] in opposing summary judgment"), *cert.
denied*, 536 U.S. 922 (2002); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1993) ("A verified
complaint is to be treated as an affidavit for summary judgment purposes.") [citations omitted].

[26]      (Dkt. No. 15.)

[27]      (Dkt. No. 44.)

[28]      *See* Fed. R. Civ. P. 56(e) (requiring that non-movant "set forth specific facts
showing that there is a genuine issue for trial"); *Patterson*, 375 F.3d at 219 (2d Cir. 2004) ("Nor
is a genuine issue created merely by the presentation of assertions [in an affidavit] that are
conclusory.") [citations omitted]; *Applegate v. Top Assoc., Inc.*, 425 F.2d 92, 97 (2d Cir. 1970)
(stating that the purpose of Rule 56[e] is to "prevent the exchange of affidavits on a motion for
summary judgment from degenerating into mere elaboration of conclusory pleadings").

[29]      *See, e.g.*, *Bickerstaff v. Vassar Oil*, 196 F.3d 435, 452 (2d Cir. 1998) (McAvoy,
C.J., sitting by designation) ("Statements [for example, those made in affidavits, deposition
testimony or trial testimony] that are devoid of any specifics, but replete with conclusions, are
insufficient to defeat a properly supported motion for summary judgment.") [citations omitted];

complaint) is nonconclusory, it may be insufficient to create a factual issue where it is (1) "largely unsubstantiated by any other direct evidence" and (2) "so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint."[30]

---

*West-Fair Elec. Contractors v. Aetna Cas. & Sur.*, 78 F.3d 61, 63 (2d Cir. 1996) (rejecting affidavit's conclusory statements that, in essence, asserted merely that there was a dispute between the parties over the amount owed to the plaintiff under a contract); *Meiri v. Dacon*, 759 F.2d 989, 997 (2d Cir. 1985) (plaintiff's allegation that she "heard disparaging remarks about Jews, but, of course, don't ask me to pinpoint people, times or places. . . .  It's all around us" was conclusory and thus insufficient to satisfy the requirements of Rule 56[e]), *cert. denied*, 474 U.S. 829 (1985); *Applegate*, 425 F.2d at 97 ("[Plaintiff] has provided the court [through his affidavit] with the characters and plot line for a novel of intrigue rather than the concrete particulars which would entitle him to a trial.").

[30]     *See, e.g.*, *Jeffreys v. City of New York*, 426 F.3d 549, 554-55 (2d Cir. 2005) (affirming grant of summary judgment to defendants in part because plaintiff's testimony about an alleged assault by police officers was "largely unsubstantiated by any other direct evidence" and was "so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint") [citations and internal quotations omitted]; *Argus, Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 45 (2d Cir. 1986) (affirming grant of summary judgment to defendants in part because plaintiffs' deposition testimony regarding an alleged defect in a camera product line was, although specific, "unsupported by documentary or other concrete evidence" and thus "simply not enough to create a genuine issue of fact in light of the evidence to the contrary"); *Allah v. Greiner*, 03-CV-3789, 2006 WL 357824, at *3-4 & n.7, 14, 16, 21 (S.D.N.Y. Feb. 15, 2006) (prisoner's verified complaint, which recounted specific statements by defendants that they were violating his rights, was conclusory and discredited by the evidence, and therefore insufficient to create issue of fact with regard to all but one of prisoner's claims, although verified complaint was sufficient to create issue of fact with regard to prisoner's claim of retaliation against one defendant because retaliatory act occurred on same day as plaintiff's grievance against that defendant, whose testimony was internally inconsistent and in conflict with other evidence); *Olle v. Columbia Univ.*, 332 F. Supp.2d 599, 612 (S.D.N.Y. 2004) (plaintiff's deposition testimony was insufficient evidence to oppose defendants' motion for summary judgment where that testimony recounted specific allegedly sexist remarks that "were either unsupported by admissible evidence or benign"), *aff'd*, 136 F. App'x 383 (2d Cir. 2005) (unreported decision, cited not as precedential authority but merely to show the case's subsequent history, in accordance with Second Circuit Local Rule § 0.23).

**B.     Motion to Dismiss for Failure to State a Claim Under Rule 12(b)(6)**

To the extent that a defendant's motion for summary judgment under Rule 56 of the

Federal Rules of Civil Procedure is based entirely on the complaint,[31] such a motion is

functionally the same as a motion to dismiss for failure to state a claim under Rule 12(b)(6).  As

a result, "[w]here appropriate, a trial judge may dismiss for failure to state a cause of action upon

motion for summary judgment."  *Schwartz v. Compagnise General Transatlantique*, 405 F.2d

270, 273-74 (2d Cir. 1968) [citations omitted], *accord*, *Katz v. Molic*, 128 F.R.D. 35, 37-38

(S.D.N.Y. 1989) ("This Court finds that . . . a conversion [of a Rule 56 summary judgment

motion to a Rule 12(b)(6) motion to dismiss the complaint] is proper with or without notice to

the parties.").  For these reasons, it is appropriate to briefly summarize the recently revised legal

standard governing Rule 12(b)(6) motions to dismiss.

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to

dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ.

P. 12(b)(6).  It has long been understood that a defendant may base such a motion on either or

both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Rule 8(a)(2);[32] or

---

[31]     (*See*, *e.g.*, Dkt. No. 42, Part 2, ¶ "9" [Thompson Affirm., asserting, *inter alia*, that Plaintiff's Fourth Amended Complaint "fails to properly state a claim upon which relief can be granted"]; Dkt. No. 42, Part 6, at 4, 7 [Defs.' Mem. of Law] [arguing, *inter alia*, that Plaintiff's Fourth Amended Complaint fails to "state a claim"].)

[32]     *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") [citations omitted]; *Princeton Indus., Inc. v. Rem*, 39 B.R. 140, 143 (Bankr. S.D.N.Y. 1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y. 1972) ("This motion under Fed. R. Civ. P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed

(2) a challenge to the legal cognizability of the claim.[33]

Rule 8(a)(2) requires that a pleading include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Such a statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."[34]  The purpose of this rule is to "facilitate a proper decision on the merits."[35]  A complaint

---

to Fed. R. Civ. P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.'").

[33]    *See  Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest. . . . In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas*, 308 F.3d 180, 187 (2d Cir. 2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation . . . fails as a matter of law.") [citation omitted]; *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 379 F. Supp.2d 348, 370 (S.D.N.Y. 2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6)].") [citation omitted]; *Util. Metal Research & Generac Power Sys.*, 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a]); *accord, Straker v. Metro Trans. Auth.*, 331 F. Supp.2d 91, 101-02 (E.D.N.Y. 2004); *Tangorre v. Mako's, Inc.*, 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion--one aimed at the sufficiency of the pleadings under Rule 8[a], and the other aimed at the legal sufficiency of the claims).

[34]    *Dura Pharm., Inc. v. Broudo*, 125 S. Ct. 1627, 1634 (2005) (holding that the complaint failed to meet this test) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 [1957]); *see also Swierkiewicz*, 534 U.S. at 512 (quoting *Conley*, 355 U.S. at 47); *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993) (quoting *Conley*, 355 U.S. at 47).

[35]    *See Swierkiewicz*, 534 U.S. at 514 (quoting *Conley*, 355 U.S. at 48).

that fails to comply with this rule "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims."[36]

The Supreme Court has long characterized this pleading requirement under Rule 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement.[37]  However, it is well established that even this liberal notice pleading standard "has its limits."[38]  As a result, several Supreme Court and Second Circuit decisions exist, holding that a pleading has failed to meet this liberal notice pleading standard.[39]

---

[36]     *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (McAvoy, J.), *aff'd*, 113 F.3d 1229 (2d Cir. 1997) (unpublished table opinion).  Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history.  *See, e.g.*, *Photopaint Tech., LLC v. Smartlens Corp.*, 335 F.3d 152, 156 (2d Cir. 2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.*, 104 F.3d 355 [2d Cir. 1996]).

[37]     *See, e.g.*, *Swierkiewicz*, 534 U.S. at 513-14 (noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake.").

[38]     2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003).

[39]     *See, e.g.*, *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-74 (2007) (pleading did not meet Rule 8[a][2]'s liberal requirement), *accord*, *Dura Pharm.*, 125 S. Ct. at 1634-35, *Christopher v. Harbury*, 536 U.S. 403, 416-22 (2002), *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234-35 (2d Cir. 2004), *Gmurzynska v. Hutton*, 355 F.3d 206, 208-209 (2d Cir. 2004). Several unpublished decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz*.  *See, e.g.*, *Salvador v. Adirondack Park Agency of the State of N.Y.*, No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr. 26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a][2]).  Although these decisions are not themselves precedential authority, *see* Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after *Swierkiewicz*, of certain cases from within the Second Circuit interpreting Rule 8(a)(2).  *See*

Most notably, in the recent decision of *Bell Atl. Corp. v. Twombly*, the Supreme Court, in reversing an appellate decision holding that a complaint had stated a claim upon which relief could be granted, "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  127 S. Ct. 1955, 1968-69 (2007).[40]  Rather than turning on the conceivability of an actionable claim, the Court clarified, the Rule 8 standard turns on the "plausibility" of an actionable claim.  *Id*. at 1965-74.  More specifically, the Court held that, for a plaintiff's complaint to state a claim, his "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]" assuming, of course, that all the allegations in the complaint are true.  *Id*. at 1965 [citations omitted].  What this means, on a practical level, is that there must be "plausible grounds to infer [actionable conduct]," or, in other words, "enough fact to raise a reasonable expectation that discovery will reveal evidence of [actionable conduct]."  *Id*.

Having said that, it should be emphasized that, "[i]n reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and

---

*Khan v. Ashcroft*, 352 F.3d 521, 525 (2d Cir. 2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS*, 244 F.3d 81 [2d Cir. 2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr*, 533 U.S. 289 [2001]).

[40]     The Court in *Twombly* further explained: "The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been adequately stated, it may be supported by showing any set of facts consistent with the allegations in the complaint. . . .  *Conley*, then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival."  *Twombly*, 127 S. Ct. at 1969.

construe all reasonable inferences in the plaintiff's favor."[41]  Moreover, "[t]his standard is

applied with even greater force where the plaintiff alleges civil rights violations or where the

complaint is submitted *pro se*."[42]  In other words, while all pleadings are to be construed

liberally, *pro se* civil rights pleadings are to be construed with an *extra* degree of liberality.

Indeed, "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest

arguments that they suggest."[43]  Moreover, when addressing a *pro se* complaint, generally a

district court "should not dismiss without granting leave to amend at least once when a liberal

reading of the complaint gives any indication that a valid claim might be stated."[44]  Of course,

granting a *pro se* plaintiff an opportunity to amend is not required where the plaintiff has already

been given a chance to amend his pleading.[45]  Moreover, an opportunity to amend should be

---

[41]     *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (affirming grant of motion to dismiss) [citation omitted]; *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994).

[42]     *Hernandez*, 18 F.3d at 136 [citation omitted]; *see also Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) (citations omitted); *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d Cir. 1999) [citation omitted].

[43]     *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) (internal quotation and citation omitted).

[44]     *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citation omitted); *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires").

[45]     *Muniz v. Goord*, 04-CV-0479, 2007 WL 2027912, at *2, n.14 (N.D.N.Y. July 11, 2007) (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord*, 04-CV-1433, 2007 WL 201109, at *5, n.34 (N.D.N.Y. Jan. 23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.*, 04-CV-1262, 2007 WL 119453, at *2, n.13 (N.D.N.Y. Jan. 10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins v. Fed. Bureau of Prisons*, 05-CV-0904, 2007 WL 37404, at *4, n.30 (N.D.N.Y. Jan. 4, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Goros v. Cent. Office Review Comm.*, 03-CV-0407, 2006 WL 2794415, at *5, n.18 (N.D.N.Y. Sept. 26,

denied to a *pro se* plaintiff where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it."[46]  This is because, even when a plaintiff is proceeding *pro se*, "all normal rules of pleading are not absolutely suspended."[47]

## III.    UNDISPUTED MATERIAL FACTS

1.    On or about February 2, 2004, Plaintiff filed a grievance with the Deputy of Security at Gouverneur C.F., complaining that he had been wrongfully denied recreation by a Sergeant Whitmarsh at Gouverneur C.F.[48]

---

2006) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Williams v. Weaver*, 03-CV-0912, 2006 WL 2799417, at *4, n.16 (N.D.N.Y. Sept. 26, 2006)  (Kahn, J., adopting report-recommendation of Lowe, M.J.).

[46]    *Cuoco*, 222 F.3d at 112 (finding that repleading would be futile) [citation omitted]; *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) [citation omitted].

[47]    *Stinson v. Sheriff's Dep't of Sullivan County*, 499 F. Supp. 259, 262 & n.9 (S.D.N.Y. 1980); *accord, Standley v. Dennison*, 05-CV-1033, 2007 WL 2406909, at *6, n.27 (N.D.N.Y. Aug. 21, 2007) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Muniz*, 2007 WL 2027912, at *2 (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *DiProjetto v. Morris Protective Serv.*, 489 F. Supp.2d 305, 307 (W.D.N.Y. 2007); *Cosby v. City of White Plains*, 04-CV-5829, 2007 WL 853203, at *3 (S.D.N.Y. Feb. 9, 2007); *Lopez v. Wright*, 05-CV-1568, 2007 WL 388919, at *3, n.11 (N.D.N.Y. Jan. 31, 2007) (Mordue, C.J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord*, 04-CV-1433, 2007 WL 201109, at *5 (N.D.N.Y. Jan. 23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.*, 04-CV-1262, 2007 WL 119453, at *2, n.13 (N.D.N.Y. Jan. 10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins*, 2007 WL 37404, at *4 (Kahn, J., adopting report-recommendation of Lowe, M.J.).

[48]    (Dkt. No. 42, Part 4, at 51 [Ex. K to Defs.' Cross-Motion, attaching Plf.'s Response to Defs.' Interrogatory No. 1]; *see also* Dkt. No. 42, Part 6, at 5 & n.4 [Defs.' Mem. of Law, apparently conceding, for purposes of their cross-motion, the truth of the alleged "happenings at Gouvernuer Correctional Facility," although disputing that Defendant Perry knew anything about those "happenings"].)

2.      On or about March 5, 2004, Plaintiff was transferred from Gouverneur C.F. to

Upstate C.F.[49]

3.      On or about May 10, 2004, Plaintiff filed a written complaint with what he refers

to as "the Department of Civil Service in Albany, N.Y." (presumably intended to mean the New

York State Department of Correctional Services), alleging misconduct by Defendant Perry, a Lt.

Quinn and other, unidentified staff members at Upstate C.F.[50]

4.      On June 28, 2004, the Captain's Office at Upstate C.F. scheduled a cell search of

various cells located at Upstate C.F. (including the cells located in Block C-11 of Building 10),

to be conducted on August 2, 2004.[51]

5.      On August 2, 2004, when Upstate C.F. staff (including Defendants Brown and

Riley) arrived at Plaintiff's cell (located in Block C-11 of Building 10) and informed Plaintiff

that they were going to perform a search of his cell, Plaintiff refused to exit his cell, and covered

---

[49]      (Dkt. No. 42, Part 4, at 51 [Ex. K to Defs.' Cross-Motion, attaching Plf.'s
Response to Defs.' Interrogatory No. 1].)

[50]      (Dkt. No. 42, Part 4, at 51 [Ex. K to Defs.' Cross-Motion, attaching Plf.'s
Response to Defs.' Interrogatory No. 4]; *see also* Dkt. No. 42, Part 6, at 3, n.1 [Defs.' Mem. of
Law, conceding, for purposes of their cross-motion, that "the plaintiff apparently has written,
according to the inmate records coordinator at Upstate C.F., numerous letters of complaint and
filed several grievances related to the conditions of his confinement at the facility . . . [including]
a written complaint on May 10, 2004 to 'the Department of Civil Service in Albany, N.Y. about
defendant P. Perry and Lt. Quinn along with other staff members as well'"].)

[51]      (*Compare* Dkt. No. 42, Part 5, ¶ 2 [Defs.' Statement of Material Facts, asserting
referenced fact and providing record citation in support thereof] *with* Dkt. No. 44 [Plf.'s
Response to Defs.' Cross-Motion, not specifically denying the asserted fact, or providing any
record citation in support of such a denial].)

18

his cell window, preventing anyone from being able to look inside the cell.[52]  When Plaintiff

finally did exit his cell, he failed to pass a security test conducted by use of a hand-scanner,

which is part of a routine pat frisk.[53]  Thereafter, Defendant Perry authorized a strip search of

Plaintiff.[54]  During the strip search, Corrections Officer B. Gayle discovered that Plaintiff had

secreted, in his rectum, a razor blade wrapped in a piece of cellophane.[55]  Upon this discovery,

Corrections Officer B. Gayle issued an inmate misbehavior report, charging Plaintiff with three

offenses: (1) possessing a weapon in violation of facility rule 113.10; (2) possessing an altered

item in violation of facility rule 113.11; and (3) smuggling in violation of facility rule 114.10.[56]

      6.     On August 12, 2004, Plaintiff filed a grievance at Upstate C.F., complaining that

---

[52]     (*Compare* Dkt. No. 42, Part 5, ¶ 3 [Defs.' Statement of Material Facts, asserting referenced fact and providing record citation in support thereof] *with* Dkt. No. 44 [Plf.'s Response to Defs.' Cross-Motion, not specifically denying the asserted fact, or providing any record citation in support of such a denial].)

[53]     (*Compare* Dkt. No. 42, Part 5, ¶ 4 [Defs.' Statement of Material Facts, asserting referenced fact and providing record citation in support thereof] *with* Dkt. No. 44 [Plf.'s Response to Defs.' Cross-Motion, not specifically denying the asserted fact, or providing any record citation in support of such a denial].)  I note that it appears from the record that, after failing the hand-scanning test, Plaintiff subsequently failed to pass a security test conducted by use of a chair scanner (called a "Body Orifice Security Scanner" or  "BOSS chair").  (Dkt. No. 42, Part 3, at 11, 14, 15 [Ex. C to Defs.' Cross-Motion, attaching documents referencing Plaintiff's failure to pass security test performed through use of "BOSS chair"].)

[54]     (*Compare* Dkt. No. 42, Part 5, ¶ 4 [Defs.' Statement of Material Facts, asserting referenced fact and providing record citation in support thereof] *with* Dkt. No. 44 [Plf.'s Response to Defs.' Cross-Motion, not specifically denying the asserted fact, or providing any record citation in support of such a denial].)

[55]     (*Id.*)

[56]     (*Compare* Dkt. No. 42, Part 5, ¶ 5 [Defs.' Statement of Material Facts, asserting referenced fact and providing record citation in support thereof] *with* Dkt. No. 44 [Plf.'s Response to Defs.' Cross-Motion, not specifically denying the asserted fact, or providing any record citation in support of such a denial].)

Corrections Officers J. McGaw and W. Brown stole his newspapers for August 9, 2004 and August 10, 2004.[57]

7.      On August 13, 2004, a Tier III disciplinary hearing was held regarding the three offenses with which Plaintiff was charged on August 2, 2004.[58]  Plaintiff declined to attend the hearing.[59]  At the end of the hearing, Plaintiff was subsequently found guilty of all three offenses, with a resulting penalty of assignment to the Special Housing Unit for twelve months and loss of good time and privileges.[60]

8.      On September 13, 2004, the Captain's Office at Upstate C.F. scheduled a cell search of various cells located at Upstate C.F. (including the cells located in Block C-11 of Building 10), to be conducted on September 20, 2004.[61]

9.      On September 20, 2004, during the scheduled search of Plaintiff's cell,

---

[57]      (Dkt. No. 42, Part 4, at 53 [Ex. K to Defs.' Cross-Motion, attaching Plf.'s Response to Defs.' Interrogatory No. 6]; *see also* Dkt. No. 42, Part 6, at 3, n.1 [Defs.' Mem. of Law, conceding, for purposes of their cross-motion, that "the plaintiff apparently has written, according to the inmate records coordinator at Upstate C.F., numerous letters of complaint and filed several grievances related to the conditions of his confinement at the facility . . . ."].)

[58]      (*Compare* Dkt. No. 42, Part 5, ¶ 6 [Defs.' Statement of Material Facts, asserting referenced fact and providing record citation in support thereof] *with* Dkt. No. 44 [Plf.'s Response to Defs.' Cross-Motion, not specifically denying the asserted fact, or providing any record citation in support of such a denial].)

[59]      (*Id.*)

[60]      (*Id.*)

[61]      (*Compare* Dkt. No. 42, Part 5, ¶ 7 [Defs.' Statement of Material Facts, asserting referenced fact and providing record citation in support thereof] *with* Dkt. No. 44 [Plf.'s Response to Defs.' Cross-Motion, not specifically denying the asserted fact, or providing any record citation in support of such a denial]; *see also* Dkt. No. 42, Part 3, at 33 [Ex. F to Defs.' Cross-Motion, attaching Watch Commander's Memorandum dated 9/13/04].)

Corrections Officer J. Price discovered, in Plaintiff's cell, a state-issued comb, which had been fashioned into a weapon.[62]  As a result, Corrections Officer J. Price issued an inmate misbehavior report, charging Plaintiff with two offenses: (1) possessing a weapon in violation of facility rule 113.10; and (2) destruction of state property in violation of facility rule 116.10.[63]

      10.    On October 11, 2004, Plaintiff filed a written complaint with what he refers to as "the U.S. Marshal's [sic] . . . based [in] the same building as Lawrence K. Baerman" (presumably intended to mean the Syracuse Office of the United States Marshal's Service), alleging (unspecified) misconduct by (unidentified) staff members at Upstate C.F.[64]

      11.    On November 1, 2004, a Tier III disciplinary hearing was held regarding the two offenses with which Plaintiff was charged on September 20, 2004.[65]  Plaintiff was found guilty of both offenses, with a resulting penalty of assignment to the Special Housing Unit for eighteen months and loss of good time and privileges.[66]

---

[62]     (*Id.*)

[63]     (*Compare* Dkt. No. 42, Part 5, ¶ 8 [Defs.' Statement of Material Facts, asserting referenced fact and providing record citation in support thereof] *with* Dkt. No. 44 [Plf.'s Response to Defs.' Cross-Motion, not specifically denying the asserted fact, or providing any record citation in support of such a denial].)

[64]     (Dkt. No. 42, Part 4, at 51 [Ex. K to Defs.' Cross-Motion, attaching Plf.'s Response to Defs.' Interrogatory No. 4]; *see also* Dkt. No. 42, Part 6, at 3, n.1 [Defs.' Mem. of Law, conceding, for purposes of their cross-motion, that "the plaintiff apparently has written, according to the inmate records coordinator at Upstate C.F., numerous letters of complaint and filed several grievances related to the conditions of his confinement at the facility . . . ."].)

[65]     (*Compare* Dkt. No. 42, Part 5, ¶ 8 [Defs.' Statement of Material Facts, asserting referenced fact and providing record citation in support thereof] *with* Dkt. No. 44 [Plf.'s Response to Defs.' Cross-Motion, not specifically denying the asserted fact, or providing any record citation in support of such a denial].)

[66]     (*Id.*)

12.     On or after January 30, 2005, Plaintiff filed a grievance at Upstate C.F., complaining that, on January 30, 2005, Corrections Officers B. Dumas, J. McGaw and D. LaPage, and Nurse Trevors, deprived Plaintiff of both his dinner meal and medical attention.[67]

13.     On or after March 18, 2005, Plaintiff filed a grievance at Upstate C.F., complaining that, on March 18, 2005, Corrections Officers L. Russle, Oppollo, Maloux, M. Riley, W. Brown, T. Ramsdell, and Laverd deprived Plaintiff of his lunch meal, and "a few more officers and [a sergeant]" failed to respond to Plaintiff's request to "see [the sergeant] about [that deprivation]."[68]

14.     On March 22, 2005, Plaintiff filed two grievances at Upstate C.F., one grievance complaining that Corrections Officer C. Manville had intentionally denied Plaintiff writing material such as paper, pens and envelopes, and the other grievance complaining that Upstate C.F. as a whole had not properly addressed any of his previous grievances filed there.[69]

15.     On April 4, 2005, Plaintiff filed a grievance at Upstate C.F., complaining that

---

[67]     (Dkt. No. 42, Part 4, at 53 [Ex. K to Defs.' Cross-Motion, attaching Plf.'s Response to Defs.' Interrogatory No. 5]; *see also* Dkt. No. 42, Part 6, at 3, n.1 [Defs.' Mem. of Law, conceding, for purposes of their cross-motion, that "the plaintiff apparently has written, according to the inmate records coordinator at Upstate C.F., numerous letters of complaint and filed several grievances related to the conditions of his confinement at the facility . . . ."].)

[68]     (Dkt. No. 42, Part 4, at 53 [Ex. K to Defs.' Cross-Motion, attaching Plf.'s Response to Defs.' Interrogatory No. 5]; *see also* Dkt. No. 42, Part 6, at 3, n.1 [Defs.' Mem. of Law, conceding, for purposes of their cross-motion, that "the plaintiff apparently has written, according to the inmate records coordinator at Upstate C.F., numerous letters of complaint and filed several grievances related to the conditions of his confinement at the facility . . . ."].)

[69]     (Dkt. No. 42, Part 4, at 54 [Ex. K to Defs.' Cross-Motion, attaching Plf.'s Response to Defs.' Interrogatory Nos. 9, 10]; *see also* Dkt. No. 42, Part 6, at 3, n.1 [Defs.' Mem. of Law, conceding, for purposes of their cross-motion, that "the plaintiff apparently has written, according to the inmate records coordinator at Upstate C.F., numerous letters of complaint and filed several grievances related to the conditions of his confinement at the facility . . . ."].)

Corrections Officers M. Riley, W. Brown, S. Bedard, and P. Burgess had denied Plaintiff

"writing pads . . . [from] the Law Library" as well as legal-mail envelopes and regular-mail

envelopes.[70]

## IV.   ANALYSIS

As a threshold matter, I find that Plaintiff's motion for summary judgment should be

denied for the reasons offered by Defendants.  *See*, *supra*, Part I.B. of this Report-

Recommendation (summarizing Defs.' arguments in opposition to Plf.'s motion).  Specifically, I

find that Plaintiff has failed to support his motion with a Statement of Material Facts, as required

by Local Rule 7.1 of the Local Rules of Practice for this Court.[71]  In the alternative, I find that

Plaintiff's motion lacks merit in that the uncontroverted record evidence warrants not the

granting of summary judgment to Plaintiff but rather the granting of summary judgment to

Defendants, for the reasons discussed below in this Report-Recommendation.  I note that several

of the arguments offered by Plaintiff in support of his motion are not merely unpersuasive but

appear to be wholly immaterial to the case at hand.  *See*, *supra*, Part I.B. of this Report-

---

[70]      (Dkt. No. 42, Part 4, at 54 [Ex. K to Defs.' Cross-Motion, attaching Plf.'s
Response to Defs.' Interrogatory No. 9]; *see also* Dkt. No. 42, Part 6, at 3, n.1 [Defs.' Mem. of
Law, conceding, for purposes of their cross-motion, that "the plaintiff apparently has written,
according to the inmate records coordinator at Upstate C.F., numerous letters of complaint and
filed several grievances related to the conditions of his confinement at the facility . . . ."].)

[71]      Local Rule 7.1 clearly states, in pertinent part, "Failure of the moving party to
submit an accurate and complete Statement of Material Facts shall result in a denial of the
motion."  L.R. 7.1(a)(3) [emphasis in original].  I note that the Clerk of Court for the Northern
District of New York has provided to all correctional facilities in New York State copies of the
Northern District's *Pro Se* Manual and Local Rules of Practice.

Recommendation (summarizing Plf.'s legal arguments in his motion).[72]

For all of these reasons, I recommend that the Court deny Plaintiff's motion for summary judgment, and I proceed to the merits of Defendants' cross-motion for summary judgment.

A.   **Whether Plaintiff Has Failed to Adduce Some Evidence Establishing (or Even Allege Facts Plausibly Suggesting) Retaliation in Violation of the First Amendment**

Claims of retaliation like those asserted by Plaintiff find their roots in the First Amendment.[73]  Central to such claims is the notion that, in a prison setting, corrections officials may not take actions which would have a chilling effect upon an inmate's exercise of First Amendment rights.[74]  Because of the relative ease with which claims of retaliation can be incanted, however, courts have scrutinized such retaliation claims with particular care.[75]  As the Second Circuit has noted,

> This is true for several reasons.  First, claims of retaliation are difficult to dispose of on the pleadings because they involve questions of intent and are therefore easily fabricated.  Second, prisoners' claims of retaliation pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration.  This is so because virtually any adverse action taken against a prisoner by a prison official--even those otherwise not rising to the level of a constitutional violation--can be characterized as a constitutionally proscribed retaliatory act.[76]

---

[72]   For example, I fail to see how Plaintiff's argument about his right to "effective assistance of counsel" has anything to do with the Fourteenth Amendment claim (or even the First Amendment claim) asserted in his Third Amended Complaint.

[73]   *See Gill v. Pidlypchak*, 389 F.3d 379, 380-81 (2d Cir. 2004).

[74]   *See Gill*, 389 F.3d at 381-383.

[75]   *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).

[76]   *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) [citations omitted], *overruled on other grounds*, *Swierkewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

To prevail on a First Amendment claim of retaliation under 42 U.S.C. § 1983, a plaintiff must prove by a preponderance of the evidence the following: (1) that the speech or conduct at issue was "protected"; (2) that the defendants took "adverse action" against the plaintiff–namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) that there was a causal connection between the protected speech and the adverse action--in other words, that the protected conduct was a "substantial or motivating factor" in the defendants' decision to take action against the plaintiff.[77]  Under this analysis, adverse action taken for both proper and improper reasons may be upheld if the action would have been taken based on the proper reasons alone.[78]

Here, I will assume, for the sake of brevity, that, at various times between 2004 and 2005 at Upstate C.F., Plaintiff engaged in conduct that was "protected" under the First Amendment and that Defendants took action against him that may be deemed to be "adverse" for purposes of the First Amendment–although this last fact appears uncertain under the current law of this Circuit.[79]  The problem is that Plaintiff has failed to adduce any evidence establishing (or even allege any facts plausibly suggesting) that there was any connection between the protected conduct and the adverse action.

For example, Plaintiff has adduced no evidence in support of his allegation that the search

---

[77]     *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Gill*, 389 F.3d at 380 (citing *Dawes v. Walker*, 239 F.3d 489, 492 [2d Cir. 2001]).

[78]     *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) [citations omitted].

[79]     *See Battice v. Phillip*, 04-CV-0669, 2006 WL 2190565, at *7 (E.D.N.Y. Aug. 2, 2006) ("The Second Circuit has not addressed whether a cell search can constitute an adverse action for purposes of a First Amendment retaliation claim; however, many district courts in this circuit have concluded that it does not.") [collecting cases].

conducted on August 2, 2004, was conducted in retaliation against him for having (on or about February 2, 2004) filed a grievance with the Deputy of Security at Gouverneur C.F., complaining that he had been wrongfully denied recreation by a Sergeant Whitmarsh at Gouverneur C.F.  The closest that Plaintiff comes to adducing such evidence is when he asserts, in his Response to Defendants' Interrogatory Number 2, that, during the search of Plaintiff's cell on August 2, 2004, Defendant Perry said to Plaintiff, "Sgt. Whitmarsh is a real good[,] close friend of [mine]."[80] However, there are several problems with this "evidence."

First, Plaintiff neglects to assert, in his Response to Defendants' Interrogatory Number 2, any facts indicating that Defendants *Riley* or *Brown* had any reason to know about Plaintiff's previous complaint against Whitmarsh.  Second, the six-month delay between the filing of Plaintiff's complaint against Whitmarsh at Gouverneur C.F. and the making of the comment by Defendant Perry at Upstate C.F., and the difference in location between the two events, each militate against a finding of a causal connection between them.[81]  Third, and most important, the

---

[80]     (Dkt. No. 42, Part 4, at 52 [Ex. K to Defs.' Cross-Motion, attaching Plf.'s Response to Defs.' Interrogatory No. 2].)

[81]     *See Dawkins v. Jones*, 03-CV-0068, 2005 U.S. Dist. LEXIS 1197, at *44 (S.D.N.Y. Jan. 31, 2005) ("A number of factors can be considered in determining whether a causal connection exists between the plaintiff's protected activity and the prison official's actions, including any statements made by the defendant concerning his motivation and the *temporal proximity* between the protected activity and the defendant's adverse action.") [emphasis added]; *see, e.g.*, *Hollander v. Am. Cyanamid Co.*, 895 F.2d 80, 85 (2d Cir. 1990) (finding period of three months between protected activity and adverse action to be insufficient to make out prima facie case of retaliation); *Woods v. Enlarged City Sch. Dist. of Newberg*, 473 F. Supp.2d 498, 529 (S.D.N.Y. 2007) ("As is evident from the case law in this circuit, in the absence of other evidence of retaliatory motive, such a time lapse [of five months between the protected activity and the adverse action] precludes a finding of causal connection between the protected activity and the adverse . . . action based on temporal proximity."); *Butts v. N.Y.C. Dept. of Hous. Pres. and Dev.*, 00-CV-6307, 2007 WL 259937, at *18 (S.D.N.Y. Jan. 29, 2007) (collecting cases in which "gaps between protected activity and alleged [adverse action] [were]

undisputed record evidence establishes that the search conducted of Plaintiff's cell on August 2, 2004, was a routine cell search that was (1) planned several days in advance, and (2) was conducted as part of a search of all cells in Plaintiff's cell block (as well as other cell blocks). *See*, *supra*, Part III of this Report-Recommendation.  Similarly, the undisputed record evidence establishes that the more-invasive search that resulted on August 2, 2004 (i.e., of Plaintiff's rectal cavity) was caused not by any retaliatory motive (allegedly) harbored by Defendants but by grounds to believe Plaintiff had hidden contraband on or in his body when Defendants appeared at Plaintiff's cell to conduct a search of the cell.  *Id.*

Under the circumstances, no rational fact-finder could, based on the current record, conclude that what happened to Plaintiff on August 2, 2004, was due to anything other than a routine search of his cell by prison authorities and a bad decision by Plaintiff to possess, and try to hide, contraband.  *See H'Shaka v. Drown,* 03-CV-0937, 2007 WL 1017275, at *5, 12-13 (N.D.N.Y. March 30, 2007) (Kahn, J., adopting Report-Recommendation of Treece, M.J.) (granting summary judgment to defendants with respect to prisoner's retaliation claim under the First Amendment where the undisputed record evidence established that the alleged adverse action, a search of the prisoner's cell, was conducted at random), *accord*, *Battice v. Phillip*, 04-CV-0669, 2006 WL 2190565, at *2, 7 (E.D.N.Y. Aug. 2, 2006).  Stated simply, even if Defendant Perry derived (due to a friendship with Sergeant Whitmarsh) some malicious satisfaction from seeing Plaintiff's cell searched on August 2, 2004, and the contraband

_____

too great to raise any inference of [retaliation]"); *Walker v. Keyser*, 98-CV-5217, 2001 WL 1160588, at *7 (S.D.N.Y. Oct. 2, 2001) ("[T]he lack of temporal proximity between April 23 [when a weapon was allegedly planted in plaintiff's cell in retaliation against plaintiff for engaging in protected conduct] and June 3, when the weapon was actually discovered, would make it impossible for a reasonable juror to infer that it was planted by a corrections officer.").

confiscated, that fact could not have *caused* the adverse action that Plaintiff experienced; the search and seizure would have happened anyway.

Nor has Plaintiff adduced any evidence in support of his allegation that the search conducted on September 20, 2004, was conducted in retaliation against Plaintiff for having filed "a lot of complaints" with the Department of Corrections in Albany, N.Y., and the United States Marshal's Service, regarding certain (but unspecified) actions taken by Defendant Perry and a Lt. Quinn. First, Plaintiff has not adduced any evidence establishing the nature or dates of these (alleged) complaints, or the fact that Defendant Perry even knew about them. As a result, there is no evidence that the (alleged) complaints caused the search on September 20, 2004. Second, and more important, again, the undisputed record evidence establishes that the search conducted of Plaintiff's cell on September 20, 2004, was a routine cell search that was (1) planned several days in advance, and (2) was conducted as part of a search of all cells in Plaintiff's cell block (as well as other cell blocks). *See*, *supra*, Part III of this Report-Recommendation.[82]

Finally, Plaintiff has adduced no evidence in support of his allegation that, at various points between August 2, 2004 (when the first search of Plaintiff's cell occurred at Upstate C.F.)

---

[82]     Similarly, Plaintiff has adduced no evidence in support of his allegation that any of the Defendants (or anyone at all) "set up" Plaintiff for the disciplinary offense of possessing a weapon by planting a weapon under his bed before or during the search on September 20, 2004. Plaintiff's Third Amended Complaint, which is not verified (or even signed), does not constitute such evidence. (Dkt. No. 15, ¶¶ 12-13 [Plf.'s Third Am. Compl.].) Nor does Plaintiff's Response to Defendants' Interrogatory Number 4, which merely asserts–in a wholly conclusory fashion–that Defendants Price and Eaton "planted on [Plaintiff]" a weapon. (Dkt. No. 42, Part 4, at 52 [Ex. K to Defs.' Cross-Motion, attaching Plf.'s Response to Defs.' Interrogatory No. 4].) I note that, on November 1, 2004, Plaintiff was, after a duly held Tier III disciplinary hearing, found guilty of possessing the aforementioned weapon, and that disciplinary conviction was never subsequently overturned on appeal. Even if there was some evidence of the "set up" that Plaintiff alleges, there is no evidence of a causal connection between such a "set up" and any protected conduct engaged in by Plaintiff.

and April 13, 2005 (when Plaintiff filed his Third Amended Complaint), some or all of the

Defendants denied Plaintiff meals, mail or recreation in retaliation against Plaintiff for having

exercised his First Amendment right to file grievances.  Again, Plaintiff's Third Amended

Complaint, which is not verified (or even signed), does not constitute such evidence.  The closest

Plaintiff comes to adducing such evidence is when he asserts, in his Response to Defendants'

Interrogatory Number 5, that Defendants Riley and Brown denied him his meal on March 18,

2005.[83]  First, Plaintiff does not assert that Defendants Riley and Brown (or anyone) in any way

indicated or implied, during the alleged deprivation, that the actions were being taken due to

Plaintiff having exercised his First Amendment right to access the courts.[84]  Second, at the time

of the alleged deprivation, the most recent grievance that Plaintiff had filed was some six weeks

old, having been filed on or about January 30, 2005.  *See*, *supra*, Part III of this Report-

Recommendation.  Third, Plaintiff does not assert any facts indicating that Defendants Riley or

Brown would have even known about that grievance, which was filed not against them but

against correctional officers B. Dumas, J. McGaw and D. LaPage, and Nurse Trevors.[85]

       As a result, I recommend that the Court dismiss Plaintiff's First Amendment retaliation

claims for failing to adduce any evidence in support of those claims.  Because of the

aforementioned evidentiary insufficiency of Plaintiff's First Amendment retaliation claims, I

need not, and do not, reach the issue of whether Plaintiff's allegations fail to state a claim for

---

       [83]      (Dkt. No. 42, Part 4, at 53 [Ex. K to Defs.' Cross-Motion, attaching Plf.'s
Response to Defs.' Interrogatory No. 5].)

       [84]      (*Id*.)

       [85]      (Dkt. No. 42, Part 4, at 53 [Ex. K to Defs.' Cross-Motion, attaching Plf.'s
Response to Defs.' Interrogatory No. 5].)

retaliation under the First Amendment, other than to note that I suspect that those allegations do

not in fact state such a claim, due to the brief and conclusory nature of Plaintiff's Third Amended

Complaint, and the Supreme Court's recent decision in *Bell Atl. Corp. v. Twombly*, 127 S. Ct.

1955 (2007), which is discussed above in Part II.B. of this Report-Recommendation.

> B.     **Whether Plaintiff Has Failed to Adduce Some Evidence Establishing (or Even Allege Facts Plausibly Suggesting) Interference with His Right to Access the Courts Under the First Amendment**

Even more deficient of evidentiary support is Plaintiff's First Amendment claim that he

was denied access to the courts.

It is well settled that inmates have a First Amendment right of access to the courts that

requires states "to give prisoners a reasonably adequate opportunity to present claimed violations

of fundamental constitutional rights."[86]  "However, this right is not 'an abstract, freestanding

right to a law library or legal assistance' and cannot ground a Section 1983 claim without a

showing of 'actual injury.'"[87]  As a result, to state a claim for denial of access to the courts, a

plaintiff must assert non-conclusory allegations demonstrating both (1) that the defendant acted

deliberately and maliciously, and (2) that the plaintiff suffered an actual injury.[88]  It is worth

noting that "[t]his actual injury requirement 'is not satisfied by just any type of frustrated legal

---

[86]     *Bounds v. Smith*, 430 U.S. 817, 828 (1977), *modified on other grounds*, *Lewis v. Casey*, 518 U.S. 343, 350 (1996); *see also Bourdon v. Loughren*, 386 F.2d 88, 92 (2d Cir. 2004) [citations omitted].

[87]     *Collins v. Goord,* 438 F. Supp.2d 399, 415 (S.D.N.Y. 2006) (quoting *Lewis v. Casey*, 518 U.S. 343, 351 [1996]).

[88]     *Lewis*, 518 U.S. at 353; *Renelique v. Duncan*, 03-CV-1256, 2007 WL 1110913, at *9 (N.D.N.Y. Apr. 12, 2007) (Strom, J.); *Howard v. Leonardo*, 845 F. Supp. 943, 946 (N.D.N.Y. 1994) (Hurd, M.J.).

30

claim,' because the Constitution guarantees only the tools that 'inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement."[89]  "'Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.'"[90]

Here, liberally construed, Plaintiff's Third Amended Complaint alleges that, at various points between August 2, 2004 (when the first search of Plaintiff's cell occurred at Upstate C.F.) and April 13, 2005 (when Plaintiff filed his Third Amended Complaint), some or all of the Defendants violated Plaintiff's First Amendment right to access to the courts by (1) wrongfully seizing from his cell copies of various of his grievances, and/or (2) wrongfully denying Plaintiff access to his legal mail and requested writing materials.  *See*, *supra*, Part I.A. of this Report-Recommendation.

However, Plaintiff has adduced no evidence that any Defendant in this action (i.e., Perry, Price, Riley, Eaton or Brown) interfered with Plaintiff's First Amendment right to access to the courts by wrongfully seizing his grievances, legal mail or writing materials.  Again, Plaintiff's Third Amended Complaint, which is not verified (or even signed), does not constitute such evidence.  Granted, Plaintiff's Responses to Defendants' Interrogatory Numbers 6 and 9 assert–in a somewhat vague fashion–that (1) Defendant Brown denied him his newspapers on either August 9 or August 10, 2004, and (2) Defendants Riley and Brown denied him legal writing pads

---

[89]     *Collins*, 423 F. Supp.2d at 415-16 (quoting *Lewis*, 518 U.S. at 355).

[90]     *Id.*

and legal envelopes on April 4, 2005.[91]  But Plaintiff (in those Interrogatory Responses) asserts

no such wrongdoing by Defendants Perry, Price or Eaton.  Moreover, Plaintiff has adduced no

evidence that those rather discrete deprivations by Defendants Riley and Brown were so

numerous and/or severe as to inhibit Plaintiff from accessing the courts.  In short, Plaintiff has

not adduced any evidence that what happened to him at the hands of Defendants Riley and

Brown caused him any *actual injury*–a requirement of establishing a First Amendment access-to-

the-courts claim.

    As a result, I recommend that the Court dismiss Plaintiff's First Amendment access-to-

the-courts claim for failing to adduce any evidence in support of that claim.  Again, because of

the aforementioned evidentiary insufficiency of Plaintiff's First Amendment access-to-the-courts

claim, I need not, and do not, reach the issue of whether Plaintiff's allegations fail to state an

access-to-the-courts claim under the First Amendment, other than to note that I suspect that those

allegations do not in fact state such a claim, due to the brief and conclusory nature of Plaintiff's

Third Amended Complaint, and the Supreme Court's recent decision in *Bell Atl. Corp. v.*

*Twombly*, 127 S. Ct. 1955 (2007), which is discussed above in Part II.B. of this Report-

Recommendation.

    C.    **Whether Plaintiff Has Failed to Allege Facts Plausibly Suggesting**
          **Interference with His Right to the Free Flow of Mail Under the First**
          **Amendment**

    In their memorandum of law, Defendants do not address Plaintiff's free-flow-of-mail

claim, presumably because that claim was so buried in Plaintiff's Third Amended Complaint that

---

    [91]    (Dkt. No. 42, Part 4, at 53-54 [Ex. K to Defs.' Cross-Motion, attaching Plf.'s
Responses to Defs.' Interrogatory Nos. 6, 9].)

it was only able to be uncovered through an exercise of special leniency by the Court in construing that pleading (due to Plaintiff's special status as a *pro se* civil rights litigant).   In any event, the Court possesses the authority (and, indeed, the duty) to *sua sponte* review allegations by prisoners that the Court has obtained reason to believe may fail to state a claim upon which relief may be granted.[92]

Under the First Amendment, prisoners have a right to "the free flow of incoming and outgoing mail."[93]   In balancing the competing interests implicated in restrictions on prison mail, courts have "consistently afforded greater protection to legal mail than to non-legal mail."[94]   A prisoner's right to receive and send mail, however, may be regulated.[95]   Such regulation "is valid if it is reasonably related to legitimate penological interests."[96]   To state a valid First Amendment

---

[92]      This authority is derived from three sources: (1) 28 U.S.C. § 1915(e)(2)(B)(ii), which provides that "the court shall dismiss [a] case [brought by a prisoner proceeding *in forma pauperis*] at any time if the court determines that . . . the action . . . is frivolous or malicious[,] . . . . fails to state a claim on which relief may be granted[,] . . . or . . . seeks monetary relief against a defendant who is immune from such relief"; (2) 28 U.S.C. § 1915A(b), which provides that, "[o]n review, the court shall . . . dismiss the [prisoner's] complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted . . . ."; and (3) Fed. R. Civ. P. 12(h)(3), which provides that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."

[93]      *Johnson v. Goord*, 445 F.3d 532, 534 (2d Cir. 2006) [internal citation omitted]; *see also Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003).

[94]      *Johnson v. Goord*, 445 F.3d at 534 [internal citation omitted]; *see also Davis v. Goord*, 320 F.3d at 351.

[95]      *Johnson v. Goord*, 445 F.3d at 534 [citation omitted]; *see also Davidson v. Mann*, 129 F.3d 700, 702 (2d Cir.1997) (upholding the validity of a prison regulation limiting inmates' purchases of stamps for non-legal mail).

[96]      *Johnson v. Goord*, 445 F.3d at 534 [internal quotation marks and citation omitted]; *Rodriguez v. James*, 823 F.2d 8, 12 (2d Cir.1987) (quoting *Turner v. Safley*, 482 U.S.

"free speech" claim involving incoming legal mail, the plaintiff must allege that prison officials *regularly* and *unjustifiably* interfered with the incoming legal mail.[97]  However, the Second Circuit has held that "as few as two incidents of mail tampering could constitute an actionable violation (1) if the incidents suggested an ongoing practice of censorship unjustified by a substantial government interest, or (2) if the tampering unjustifiably chilled the prisoner's right of access to the courts or impaired the legal representation received."[98]

Here, liberally construed, Plaintiff's Third Amended Complaint alleges that, at various points between August 2, 2004 (when the first search of his cell occurred at Upstate C.F.) and April 13, 2005 (when he filed his Third Amended Complaint), some or all of the Defendants violated Plaintiff's First Amendment right to the free flow of mail by wrongfully denying Plaintiff access to his legal mail and regular mail.  *See*, *supra*, Part I.A. of this Report-Recommendation.  However, Plaintiff fails to allege facts plausibly suggesting that any Defendant took actions, with regard to Plaintiff's mail, that were so numerous and/or severe as to either (1) rise to the level of a regular or ongoing interference with Plaintiff's incoming or outgoing legal mail, or (2) chill Plaintiff's right of access to the courts or legal representation.

As a result, I recommend that the Court dismiss Plaintiff's First Amendment access-to-the-courts claim.

---

78, 89 [1987]).

[97]     *Davis v. Goord*, 320 F.3d at 351 [citation omitted].

[98]     *Id.* at 351.

**D.**     **Whether Plaintiff Has Failed to Adduce Some Evidence Establishing (or Even Allege Facts Plausibly Suggesting) a Violation of the Eighth Amendment**

Before I analyze this claim, a few words are necessary about the Court's authority to review the pleading and evidentiary sufficiency of this claim.  Of course, the Court has the authority to *sua sponte* review the pleading sufficiency of this claim, for the reasons stated above in Part IV.C. of this Report-Recommendation.  In addition, however, the Court has the authority to review the evidentiary sufficiency of this claim, under the circumstances.  Granted, Defendants' cross-motion for summary judgment did not assert an argument expressly focusing on the evidentiary insufficiency of this claim.   However, Plaintiff himself put this claim at issue by moving for summary judgment with regard to it.  Thus, it cannot be said that he has not had a fair and full opportunity to present evidence and arguments regarding the claim.  *See Ramsey v. Coughlin*, 94 F.3d 71, 73 (2d Cir. 1996) (one party's motion for summary judgment on a claim may lead to a *sua sponte* grant of summary judgment for the opposing party on that claim, even without a formal cross-motion addressing that claim).

Generally, to prevail on a claim of inadequate prison conditions under the Eighth Amendment, a plaintiff must show two things: (1) that the conditions of his confinement resulted in deprivation that was *sufficiently serious*; and (2) that the defendants acted with *deliberate indifference* to plaintiff's health or safety.[99]

Specifically, with regard to the first prong of this test, "the plaintiff must demonstrate that the conditions of his confinement resulted in 'unquestioned and serious deprivations of basic

---

[99]     *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Davidson v. Murray*, 371 F. Supp.2d 361, 370 (W.D.N.Y. 2005).

human needs' or 'deprive[d] inmates of the minimal civilized measures of life's necessities.'"[100]
For example, a prisoner must demonstrate that he has been deprived of a "single, identifiable
human need such as food, warmth, or exercise."[101]  If, however, the condition is not sufficiently
prolonged or severe, it does not rise to the level of an Eighth Amendment violation.[102]  As
recognized by the Supreme Court, "the Constitution does not mandate comfortable prisons,"
and conditions that are "restrictive and even harsh . . . are part of the penalty that criminal
offenders pay for their offenses against society."[103]

Here, liberally construed, Plaintiff's Third Amended Complaint alleges that, at various
points between August 2, 2004 (when the first retaliatory search of Plaintiff's cell occurred at
Upstate C.F.) and April 13, 2005 (when Plaintiff filed his Third Amended Complaint), some or
all of the Defendants violated Plaintiff's right to adequate prison conditions under the Eighth
Amendment when, by taking the aforementioned retaliatory and harassing actions, they, with
deliberate indifference, denied Plaintiff the minimal civilized measure of life's necessities.  *See*,
*supra*, Part I.A. of this Report-Recommendation.

However, with regard to the first prong of the above-stated two-pronged test, I find that
Plaintiff has not adduced evidence establishing (or even alleged facts plausibly suggesting) that
the sum total of the prison conditions imposed on him by Defendants between 2004 and 2005 at

---

[100]     *Davidson*, 371 F. Supp.2d at 370 (citing *Rhodes v. Chapman*, 452 U.S. 337, 347
[1981]).

[101]     *Wilson v. Seiter*, 501 U.S. 294, 304 (1991).

[102]     *Trammel v. Keane*, 338 F.3d 155, 164-65 (2d. Cir. 2003).

[103]     *Davidson*, 371 F. Supp.2d at 370 (quoting *Rhodes*, 452 U.S. at 347, 349).

Upstate C.F. resulted in a deprivation that was sufficiently serious for purposes of the Eighth

Amendment.  Specifically, while Plaintiff does allege that Defendants have deprived him of

"regular meals" and "recreation," he does not specify to whom he is referring, nor does he

specify when these alleged deprivations occurred.[104]  Even if the Court could look past the lack of

fair notice given to Defendants through Plaintiff's vague allegations, the Court could not look

past the evidentiary deficiency of Plaintiff's Eighth Amendment claim.  Granted, Plaintiff has

adduced some evidence indicating that Defendants Riley and Brown may have deprived him of

lunch on March 18, 2005.[105]  However, Plaintiff has adduced no evidence regarding a meal

deprivation by Defendants Perry, Price and Eaton, and he has adduced no evidence regarding the

deprivation of recreation by anyone.  More important, the *two* meal deprivations that Plaintiff

presumably experienced at the hands of *all* correctional employees at Upstate C.F. (i.e., not just

Defendants) were not sufficiently numerous, prolonged or severe to rise to the level of an Eighth

Amendment violation.[106]

Moving to the second prong of the above-stated two-pronged test (i.e., the prong that

regards Defendants' mental states), even if there were a sufficiently serious deprivation, I find

that Plaintiff has not adduced evidence establishing (or even alleged facts plausibly suggesting)

that any of the Defendants acted with *deliberate indifference* to Plaintiff's health or safety.  At

most, the evidence indicates there may have been some negligence on the part of Defendants

---

[104]     (*See* Dkt. No. 15, ¶¶ 14, 18 [Plf.'s Third Am. Compl.].)

[105]     (Dkt. No. 42, Part 4, at 53 [Ex. K to Defs.' Cross-Motion, attaching Plf.'s
Response to Defs.' Interrogatory No. 5].)

[106]     (*Id*.)

Riley and Brown.  However, even if true, such evidence would not be enough to make

Defendants Riley and Brown liable to Plaintiff under the Eighth Amendment.[107]  This is because

the sort of mental state required for liability under the Eighth Amendment is akin to *criminal*

*recklessness*.[108]

 As a result, I recommend that the Court dismiss Plaintiff's Eighth Amendment claim.

**E. Whether Plaintiff Has Failed to Adduce Some Evidence Establishing (or Even Allege Facts Plausibly Suggesting) a Violation of His Right to Due Process Under the Fourteenth Amendment**

 Again, before I analyze this claim, a few words are necessary about the Court's authority

to review the pleading and evidentiary sufficiency of the claim.  Under the circumstances, the

Court has the authority not only to *sua sponte* review the pleading sufficiency of this claim (for

the reasons stated above in Part IV.C. of this Report-Recommendation) but the authority to

review the evidentiary sufficiency of this claim (for the reasons stated above in Part IV.D. of this

Report-Recommendation).  Specifically, because Plaintiff himself put this claim at issue by

moving for summary judgment with regard to it, he cannot be said not to have had a fair and full

opportunity to present evidence and arguments regarding the claim.  *See Ramsey*, 94 F.3d at 73.

 The Due Process Clause of the Fourteenth Amendment contains both a substantive

---

 [107] *Farmer*, 511 U.S. at 835 ("[D]eliberate indifference describes a state of mind more blameworthy than negligence.").

 [108] "'The required state of mind [for a deliberate indifference claim under the Eighth Amendment], equivalent to criminal recklessness, is that the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and he must also draw the inference.'"  *Evering v. Rielly*, 98-CV-6718, 2001 U.S. Dist. LEXIS 15549, at *30 (S.D.N.Y. Sept. 28, 2001) (quoting *Hemmings v. Gorczyk*, 134 F.3d 104, 108 [2d Cir. 1998]).

component and a procedural component.[109]  The substantive component "bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them."[110]  The procedural component bars "the deprivation by state action of a constitutionally protected interest in life, liberty, or property . . . *without due process of law*."[111]  One of the differences between the two claims is that a substantive due process violation "is complete when the wrongful action is taken," while a procedural due process violation "is not complete unless and until the State fails to provide due process" (which may occur *after* the wrongful action in question).[112]  More specifically, "[s]ubstantive due process protects individuals against government action that is arbitrary, . . . conscience-shocking, . . . or oppressive in a constitutional sense, . . . but not against constitutional action that is incorrect or ill-advised."[113]  The first step in a substantive due process analysis is to identify the precise constitutional right at stake; the next step is to consider whether the state action was arbitrary in the constitutional sense.  On the other hand, courts examine procedural due process questions pursuant to a different two-step procedure: "the first [step] asks whether there exists a liberty or property interest which has been interfered with by the State . . . ; the second [step] examines whether the procedures attendant

---

[109]     *Zinernon v. Burch*, 494 U.S. 113, 125 (1990).

[110]     *Zinernon*, 494 U.S. at 125 [internal quotations marks and citation omitted].

[111]     *Id*. at 125-26 [internal quotations marks and citations omitted; emphasis in original].

[112]     *Id*.

[113]     *Lowrence v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994) [internal quotation marks and citations omitted], *aff'g*, 91-CV-1196, *Memorandum-Decision and Order* (N.D.N.Y. Jan. 26, 1993) (DiBianco, M.J.) (granting summary judgment to defendants in inmate's civil rights action).

upon that deprivation were constitutionally sufficient . . . ."[114]

Here, liberally construed, Plaintiff's Third Amended Complaint alleges that, at various points between August 2, 2004 (when the first retaliatory search of Plaintiff's cell occurred at Upstate C.F.) and April 13, 2005 (when Plaintiff filed his Third Amended Complaint), some or all of the Defendants violated Plaintiff's due process rights under the Fourteenth Amendment when, by taking the aforementioned actions, they denied him property and/or liberty without due process of law.  *See*, *supra*, Part I.A. of this Report-Recommendation.  Plaintiff does not specify whether he is alleging a violation of substantive due process or procedural due process, or perhaps both.  But, out of special solicitude to him, I will liberally construe his Third Amended Complaint as attempting to assert both claims.

The problem is that Plaintiff has adduced no evidence establishing (or even alleged facts plausibly suggesting) that any Defendant actually committed a violation of either Plaintiff's procedural due process rights or his substantive due process rights while he was incarcerated at Upstate C.F. between 2004 and 2005.  For example, there is no evidence in the record that any Defendant in this action has, as Plaintiff has conclusorily alleged, confiscated any "legal pleadings" or other property from Plaintiff's cell, sufficient to implicate Plaintiff's right to substantive due process.[115]

Moreover, the bulk of Plaintiff's due process claim is that, in September 2004, he was issued a misbehavior report that was false in that the weapon giving rise to the charge was

---

[114]   *Kentucky Dept. of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

[115]   (Dkt. No. 15, ¶¶ 20 [Plf.'s Third Am. Compl.].)

"planted" in his cell.[116]  However, "[i]t is well established that in the absence of other aggravating

factors, an inmate enjoys no constitutional right against the issuance of a false misbehavior

report."  *Ciaprazi v. Goord*, 02-CV-0915, 2005 WL 3531464, at *13 (N.D.N.Y. Dec. 22, 2005)

(Sharpe, J., adopting Report-Recommendation of Peebles, M.J.) [citations omitted].[117]  "The

rationale supporting this general rule is that an inmate's procedural due process rights are

adequately safeguarded by the opportunity to challenge and present evidence to rebut the false

accusations at a disciplinary hearing."  *Ciaprazi*, 2005 WL 3531464, at *13 [citation omitted].

Here, Plaintiff does not allege facts plausibly suggesting that he was deprived of procedural due

process (such as being deprived of witnesses, evidence, an opportunity to be heard, a fair and

impartial hearing officer, etc.) at either of his disciplinary hearings, or that either of his

disciplinary convictions was overturned on appeal.[118]  In any event, even if the Court were to *sua*

*sponte* review the transcripts of the disciplinary hearings, the Court would not find evidence of

such a violation sufficient to create a question of fact for purposes of summary judgment.[119]

   As a result, I recommend that the Court dismiss Plaintiff's Fourteenth Amendment due

---

[116]   (*Id.* at ¶¶ 12-13, 17-18.)

[117]   *See also Hodges v. Jones*, 873 F. Supp. 737, 743-744 (N.D.N.Y. 1995) (Chin, J.).

[118]   (*See generally* Dkt. No. 15 [Plf.'s Third Am. Compl.].)

[119]   (*See* Dkt. No. 42, Part 3, at 26-31 [Ex. E to Defs.' Cross-Motion, attaching transcript of Plaintiff's first disciplinary hearing]; Dkt. No. 42, Part 4, at 4-36 [Ex. I to Defs.' Cross-Motion, attaching transcript of Plaintiff's second disciplinary hearing].)  I note that, at his second disciplinary hearing, as requested by Plaintiff, the hearing officer reviewed two videotapes, and gave Plaintiff an opportunity to question under oath Defendants Perry, Eaton and Price, and Corrections Officers Soucia, LaPage, Barney and Rowe.  (*See* Dkt. No. 42, Part 4, at 4-36 [Ex. I to Defs.' Cross-Motion, attaching transcript of Plaintiff's second disciplinary hearing].)

process claim.

ACCORDINGLY, it is

RECOMMENDED that Plaintiff's motion for summary judgment (Dkt. No. 36) be

**DENIED**; and it is further

RECOMMENDED that Defendants' motion for summary judgment (Dkt. No. 42) be

**GRANTED**; and it is further

RECOMMENDED that Plaintiff's Third Amended Complaint (Dkt. No. 15) be

**DISMISSED** **with prejudice**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days

within which to file written objections to the foregoing report.  Such objections shall be filed

with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN**

**DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d

Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 [2d Cir. 1989]); 28

U.S.C. § 636(b); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: September 19, 2007
        Syracuse, New York

George H. Lowe
United States Magistrate Judge